The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Please be seated. All right, we'll begin with Zaid v. Department of Justice and Mr. Morris. Good morning, Your Honor. It may please the Court. My name is Bradley P. Moss, counsel for the appellant, Mark Zaid, who's also present in the courtroom today. You have on appeal before you two very simple questions in what should be a rather straightforward Freedom of Information Act case. Did the District Court err in concluding as a matter of law that the agency appellee has properly and categorically invoked Exemption 7A? And in the alternative, did the District Court err in concluding that the underlying exemptions, Exemptions 5, 6, 7C, 7D, were also properly invoked? It is our position, as we outlined in our papers, that this panel should reverse the District Court's memorandum opinion of July 5th and should remand the matter back with instructions with respect to the underlying exemptions, reversing only on the categorical 7A invocation and providing instructions for the District Court to address the underlying exemptions, which, again, as we outlined in our papers, there's insufficient information to rule one way or the other. In terms of the decision tree, you agree we can't just say the District Court was wrong about 7A because that would leave the District Court's decision affirmed on alternative grounds. So you've identified two things you're asking us to do. You agree we have to do both of those to reverse, right? Correct, correct. You would have to, in the alternative, also conclude, as we had outlined in the District Court. Well, no, not in the alternative. We would have to, in addition, conclude that the District Court was wrong about those two, right? Correct, correct, Your Honor, yes. Summary judgment review in a FOIA action is done de novo. It's essentially whether or not the District Court's conclusion was clearly erroneous, and as we've outlined in our papers, we believe it was. Exemption 7A is the law enforcement ongoing investigation exemption. It's meant to allow the agencies to withhold information if disclosure of it would reasonably be expected to interfere in ongoing investigations. But there's an initial threshold question that there seems to be some dispute about, which is how they have to describe the investigations. The government is obviously cited to the Spanos decision. What more could you reasonably expect? I mean, at a certain point, the Vaughan Index becomes sort of tantamount to the documents themselves. But this did not seem to me to be a skimpy Vaughan Index. If you take the Seidel declarations and the Backland declarations, they totaled about 100 pages, and the pages were used to explain the types of records withheld and the justifications for doing so. The Seidel declaration identified 19 different types of record, and the Seidel declaration explained each type of record. Then it distilled those categories into subcategories, and each of the subcategories had its own explanation, and it just seems to me in looking through this that you got a great deal of information. And the Supreme Court has not said you don't have to go document by document, that you can go categorically. Correct, Judge Wilkinson. We're not disputing the Robbins-Tyra, the Supreme Court, the initial foundation. But as the panel in Spanos outlined, and as the D.C. Circuit has clarified, as far as we're concerned, it's not a different framework. They've clarified how the courts should evaluate these categorical descriptions. It still needs to be functional. It needs to provide the court with the ability to trace the category of documents and link it to the alleged likely interference. So, for example, looking at the Vaughn Index, and as we outlined in our papers, one of our particular issues, for example, with the information concerning physical and documentary evidence was the lack of detail about where these documents are coming from. For example, if they are in already publicly docketed criminal cases, that would seem to undercut the idea that disclosure of them or even identification of more details would be reasonably likely to interfere with an ongoing investigation. They may not be, but the government's affidavits, neither the two Seidel declarations nor the declaration from Agent Backlund ever clarifies that point. And in preparation for these oral arguments, I took that description, that category verbiage, ran it through LexisNexis, trying to see how many of the times the agencies use this. I found a grand total of three cases, and if one of your clerks find more, I'm going to be embarrassed, but I found three cases. One is this case. One is the case that we referenced that's in the Middle District of Florida with a similar FOIA request and had a different ruling. And one is from the Southern District of Florida, the Villanova case that we identified in our reply brief. Those are the only three cases they've ever used this category, and we've got a differing of opinions now as to how much detail they have to provide. The Villanova case said, you've got to explain to me if this was already identified in publicly docketed cases. Your Vaughn Index doesn't say anything about it. How am I supposed to conclude from a functional standpoint that this hasn't already been disclosed in some form in the public domain? And that is, as far as we are concerned, a critical flaw in that particular category, and that's as we outlined in our papers. Can I ask you how this maps on to the standard of review that we've articulated in these cases? Which I will just say, first, is not your fault, and second, strikes me as bananas and totally inconsistent with Federal Rule of Civil Procedure 56. But, so do you agree that each of your arguments falls, reviewing the question of, quote, whether the district court had an adequate basis for the factual record? This is like the part of the analysis that we've said, that we do, that your argument maps on to. Do you agree with that? Correct, yes. And do you agree that regardless of this weird, clearly erroneous, that is not clearly erroneous, that your argument falls within the category that we reviewed de novo, even under our existing sort of framework? Like, whether the district court has an adequate basis for its decision is something that the Court of Appeals, under our existing precedent, reviews de novo? That's as far as I understand, yes, Your Honor. And to follow on with this idea, since we're getting into the categories, that was one of two categories that we had obviously disputed at the district court level that we identified. The other one is this exchange of information category. And this was the one that we particularly highlighted, had been addressed in detail in that similar proceeding in the Middle District of Florida. Now, the district court in Maryland was certainly free to disagree with that, if it wanted to. It was under no obligation to consider it persuasive. But what we were concerned about, and we outlined this in our papers, is the district court ignored it. It was fully made aware of it, didn't even put in a footnote saying, I simply disagree. It completely ignored it as if the ruling didn't exist. And as the government has outlined in its declarations, some of the records overlap between this case and the records that they were trying to categorically protect under 7A in the Middle District of Florida. The arguments were essentially the same. The category was the exact same. Why does any of that matter if our standard of review is de novo? Only in the sense of considering it from a persuasive standpoint is should that ruling, should the ruling from the Middle District of Florida, Judge Mary Day's analysis, inform the panel. I mean, sure. If our standard of review is de novo of the district court, I guess I'll just say candidly, my colleagues might disagree. I routinely, when writing opinions, ignore district court opinions from outside the Fourth Circuit. I routinely just don't even mention them in an opinion that I write because, with all respect, they're not binding on me. They're not binding on district courts within the Fourth Circuit. If this court routinely ignores district court opinions outside the Fourth Circuit, I don't understand why a district court in the Fourth Circuit has to explain why they disagree with a district court judge who's not in the Fourth Circuit. I only raise it in the sense that the records are deriving from a similar, if not identical, FOIA request. The categories are the exact same verbiage. That's a consequence of... I mean, again, I'm not necessarily saying this is anything bad. I'm not saying it's anything nefarious. I'm not saying you're violating the statute. That is a consequence of your decision to file similar FOIA requests all over the country. What did you think might happen? That you might get inconsistent rulings? You sort of chose to do that when you chose to seek these same records all over the country in different courts. Fully understood, Your Honor. And I think what we have been trying to simply indicate, and the panel is, again, fully within its authority to say we don't care what the judge in Mill District, Florida, said. We were simply highlighting it for the context of supporting our argument in the sense of why the district court's conclusion was clearly erroneous. You agreed to me that this is de novo. Sorry, yes. Why the district court didn't have an adequate factual basis, and it was de novo review, because just as the district court judge in Florida had said, the government's affidavits in this case, just like the ones in Florida, are not functional. You cannot trace, you cannot functionally trace and reasonably trace every potential communication between the FBI and the law enforcement agency to the alleged likely interference with the enforcement proceeding, which is that it would identify a third party. Sorry, this is going back to something you said earlier. I have real, so one of the things you're saying the district court failed to do was to consider whether this information was in the public domain. Did you argue that in the district court? Because I don't remember seeing anything in the district court's analysis or your briefing to the district court where you said one of the reasons this doesn't apply is because some of this stuff might be already in the public domain. Did you ever argue that below? My recollection from the district court proceeding was that in our initial opposition, because the first Seidel declaration was so minimalistic in our view, we simply stated, you have not demonstrated, you have not sufficiently demonstrated that these are exempt under this category, your factual descriptions are insufficient. We didn't even get to that point. We were just walking off the original verbiage. The second Seidel declaration added information to which we never had an opportunity, obviously, to respond as it came attached to the reply brief in support of the government's motion. This is a broadly worded exemption. My question is, if any records that could reasonably be expected to interfere with enforcement, law enforcement proceedings, would the word reasonably be expected? It may be a de novo standard of review, but when you have an exemption worded in terms of reasonably be expected, that kind of judgment call on reasonableness is something we often credit district courts, district court judgment on. It is different, I think, from reviewing a question of statutory interpretation. I mean, reasonableness, one person's reasonableness may be another's unreasonableness, but given the fact that the exemption is broadly worded and given the fact that it hinges on a judgment of reasonableness, it seems to me that some respect ought to be paid to what the district court did. So what I would say in response to that is, it is very much a subjective assessment of what is going to be reasonable. It's going to be case by case for certain with every district court judge, and it's sort of one of those issues of you know it when you see it. And as we cited to in our papers of the various district court rulings, both in this circuit as well as the many ones in the D.C. circuit where most FOIA litigation is handled. When does FOIA begin to conflict with the Federal Rules of Criminal Procedure and the discovery obligations of the government? I mean, it seems to me that the Federal Rules of Criminal Procedure give you the right to certain things and not to certain other things, and the Federal Rules of Criminal Procedure are a good deal more specific than the general statement in Exemption 7A. It's a sort of basic canon of law that the specific controls the general. And I'm wondering whether in this instance, the Federal Rules of Criminal Procedure wouldn't be the more specific and more on point. So I would say, Your Honor, is that the way the agencies have sort of adopted FOIA to address that potential issue with the Federal Rules of Criminal Procedure is they have a very broad ability to withhold records under Exemption 3, particularly when it comes to grand jury issues, particularly when it comes to any number of matters that would be under seal. That's not an issue with 7A. The sole issue with 7A is essentially this broad categorical invocation that if we disclose any of these records tied to any of these amorphous, abstract third-party investigations, it would undermine these ongoing enforcement proceedings. That's how, at least as far as I would assess it, they have sort of addressed the federal criminal aspect in comparison to FOIA. Thank you. Ms. Minnis. Good morning, Your Honors. May it please the Court, my name is Tyra DeShields Minnis, and I'm here on behalf of the appellee in this particular case. And please let me know if I am not projecting loudly enough for Your Honors. Speak up, because I want to make sure that I hear what you have to say. Yes, Your Honor, I will. Is that better? Yes, thank you. Thank you. Although the Court has a limited role in reviewing the findings of the District Court in a FOIA case, from a fair reading of the record, I think that this Court may readily affirm the judgment of the District Court because the lower court was indeed provided with sufficiently detailed definitions of the two subcategories at issue, in particular here, that were withheld pursuant to Exemption 7A, to allow the Court to grasp how each of those subcategory of documents could reasonably be expected to interfere with enforcement proceedings, whether they were ongoing proceedings or whether they were prospective. The same level of specificity also informed the District Court's assessment of the appropriateness of the applicability of the additional exemptions that were asserted under Exemptions 5, 6, 7C, and 7D. But turning first to Exemption 7A... Before I get to the conceptual question, same question I asked your friend on the other side. Do you agree that the critical determinations here all turn on the adequacy of the factual basis part of the analysis? Absolutely, Your Honor. And do you agree that we have said that is reviewed de novo? Yes. Okay. It must be pointed out that unlike what Appellants' Counsel seems to suggest... I suppose one of the concerns here, when you say that disclosure allows... ...and intimidation, those are general statements and they speak to real harms. I suppose the concern is that you don't want them to become just pure boilerplate that you just sort of open the desk drawer and pull out the boilerplate and recite these harms. The harms are very real. But specifically, tell me how the Vaughan Index relates to these harms, which are expressed in general terms. But how are these harms at play in this case? Well, as the Vaughan Index coupled with the two Seidel declarations as well as the Backland declarations attest... And let me just go off of one point, Your Honor. Mr. Moss indicated that he did not have the opportunity to respond to the supplemental affidavits that were appended to the government's reply. I would just simply point out that Mr. Moss had the opportunity to ask the District Court for leave to file a SOAR reply to respond... I mean, do you have any specific witness or the victim that would be subject to harassment? Or do you have... Are you able to point to something that would pose a danger of destruction of evidence? Or is this the kind of case that would lend itself to the destruction of evidence? Absolutely, Your Honor. Remember that this is a child pornography case. And they are downloading images, they are sharing images on electronic devices. So the destruction of evidence would be particularly likely in a child pornography case. You'd just get rid of your files, right? Absolutely. And so with this kind of situation, the files are the evidence. And that can pretty easily, I suppose, be disposed of. And I'm just looking for specificity that relates... You know, I've suggested one example. I'm just looking for examples of how these general harms, which I fully credit, pertain to this case. Well, Your Honor, I don't think that the Vaughn Index or the Seidel Declarations could specifically give you the identity of a particular victim who was harmed. Because then that would reveal information that they are... You know, that's an unwarranted invasion of the individual's privacy for purposes. So I think that that is why they have to descriptively say that there are these harms that can occur. And certainly in a child pornography case with images and whatnot, you have people... They have to be real people, you know, in order for it to be prosecuted under those particular statutes and whatnot. That the victims there, they definitely could suffer harm. I don't think that that's too unreasonable without specifically linking it to a particular individual, that that is too far a stretch or too much of an inferential leap. I suppose that, you know, that you can't require too much in the way of specificity, because it would be tantamount to conceding your case and to turning over the documents themselves. I mean, the Supreme Court says you can proceed categorically, and you've got categories and you've got subcategories, and you're explaining why each category and subcategory implicates a law enforcement interest. But at a certain point in time, the Vaughan Index, it becomes so extensive that you get more and more specific, and at some point you say, well, what's the difference between the Vaughan Index and just turning over the documents? Absolutely, and that is the point, Your Honor. The FBI put enough detail in here in order for the categories that they define to be functional, in the sense that the court could trace that link to the nature of the document and the perceived harm that would flow from the release of the document in terms of its interference with law enforcement. As Your Honor has pointed out, to get even more specific in this very detailed Vaughan Index supplemented with the Seidel Declaration and the Backland Declaration would be to give them all of the discovery that they seek in this particular case that they would not otherwise be entitled to under criminal rules. Isn't that the fallacy of false dilemma? Either we have to be categorically, say, recovered or we have to turn it all over. There's something between redaction, closed cases versus ongoing cases, those kind of things. Isn't there a lot in between, not this false dilemma that you have? I agree, Your Honor, that it is not an all or nothing proposition with respect to, and I think that this case in particular strikes that right balance with regard to giving the district court the level of specificity that it needed in order to figure out whether or not Exemption 7A was properly invoked and properly applies in this case. They need not furnish the level of detail that Mr. Moss advocates before this court. He wants to turn this into a document-by-document-by-document assessment of whether or not the exemption applies. And that flies in the face of what this court deemed was acceptable in Spanis, and I would submit here that what the FBI did met that, I think exceeded it in any event, and it also exceeds what the Supreme Court has said in National Labor Relations Board versus rubber tires and also CRU versus United States versus DOJ, the generic approach, the categorical approach. Well, we start with this overarching thing, and you may disagree, but this FOIA is somewhere, the theory is that sunshine sanitizes and makes us all safer in terms of what our government is doing at all levels, federal, state, local. And there are exemptions, but isn't it sort of a burden on you, even when you get to a category of an exemption, to be narrower so that FOIA, the congressional intent, is carried out? I don't think that the level of specificity here is so broad that you would run the risk of saying that they have done what Congress and what the case law says that you cannot do, which is basically seeking sort of a blanket exemption. Yes, they try to narrow the categories as much as they possibly can, but there's only, as Judge Wilkinson pointed out, given the level of detail that's provided in this particular Vaughn Index coupled with the Seidel declarations and the Backland declarations, there's only so much narrowing that you can do in describing. I mean, simply as a matter of circuit precedent, this would seem to be the government has disclosed a good bit more than in Spanos where we upheld the exemption. But, I mean, circuit precedent has got to put a part of this, play a part of this. And the disclosure here was more forthcoming than it was in Spanos where we upheld the exemption. I mean, this seems to me circuit precedent, if we respect it, has got to play a role. I definitely agree with that, Judge Wilkinson. And as was pointed out in the Afflees brief, the court could actually stop its analysis there with Spanos because, as I indicated, the evidence that was provided in the way of the declarations and the Vaughn Index certainly meet that Spanos test. And it also meets, you know, whatever the test, I'm sorry, not whatever, but the test that's employed, it's longstanding, longstanding use in the D.C. Circuit. Do you think those are different tests or do you think they're basically just different ways of saying the same thing with the D.C. Circuit having been slightly more specific? Although, in fairness to them, they've had a lot more FOIA cases. Do you think those are different tests or do you think those are arguably just basically the same test? They are the same test, Your Honor. The courts would still be going through the same type of analysis. I think that the D.C. Circuit just made it a little bit tidier, if you will. We've had a lot more FOIA cases than we have. Correct, correct. But if you read Spanos and you read, you know, the tests that are in, that is discussed in the D.C. Circuit cases involving FOIA and whatnot, it is the same. It's the same. Can I ask you a question that's just, it's sort of a factual question that I've just been rattling around in my head ever since I saw this? So why did the FBI keep searching for and producing documents after they said that 7A applied? I just couldn't figure out why they did that. Factually. It just seemed weird. Well, it may seem weird to you, but in FOIA land, I think that consistent with their obligations or their perception of what their obligations are, they will continue and continue and continue to search to make sure that they haven't missed anything in the way of responsive documents that could fall. And I think that that's probably an honorable approach. So it's not uncommon, that even if it strikes me as odd, it's not something, you've seen things like that before? I have, Your Honor. I have, Your Honor. And I know, if I can just step outside of the record here, that, you know, folks have often been instructed to keep making sure that there is, because obviously there are some instances, I mean, you can just... People miss documents the first time they look. I had a case where, that was cited by Mr. Moss, where the IRS had a number of documents that they disclosed, but then subsequently found, like, well over 6,000 additional documents that arguably could be deemed responsive. And so that search goes on. So it seems to me that the strongest point here is the first cital declaration. And the first cital declaration, if the Supreme Court says you can go categorically, which it does, the first cital declaration details 19 types of records. Now, that's pretty specific in terms of the categorical approach. And I suppose if you were going to take advantage of the categorical approach, you would just break it down broadly into one or two or three categories of records. But that's not what happened here. It was broken down into 19 different types of records. And then with respect to each type of record, not only were there the 19 categories, but there were a number of subcategories for each of the 19 categories. And each of those came with their own explanation as to why they would compromise law enforcement. And, you know, when you look at the run-of-the-mill declarations, they are courts have upheld the exemption with information that was far less detailed than the first cital declaration here. And so they don't, most of these Vaughan indexes or whatever, they don't break it down into 19 different categories and then subcategories and attach a specific explanation to each of those. And it just seems to me that we are playing games with circuit precedent and also run the risk of being a real outlier given the detail that is in the cital declaration and the categorical approach which the Supreme Court has not only approved, but affirmatively suggested. I agree with that wholeheartedly, Your Honor. And I don't know, particularly given the detail that has been provided in this particular case, if you were to find that the district court erred in finding that 7A applied, I don't know how in future cases agencies could overcome that. I don't know in the future case what an agency, a law enforcement agency, could do short of disclosing all the documents themselves that would satisfy an appellate court. I mean, if this doesn't suffice, I don't know what the law enforcement agency could be expected to do in the future. Absolutely, Your Honor. And as you've already pointed out, even in the cital declarations where they break everything down, they go beyond just the mere labels to explain the subcategories. Like, for instance, with respect to one of the categories that they label, it's at JH043, it would be 9I. They talk about, I'd say 9J, they talk about payment request forms, FD794. If that's all that was set forth there, you wouldn't have any idea what that means. But the FBI went further and explained, well, these are administrative forms that are used for commercial, and a lot of this relates to the covertness that happens in their investigations, and they're paying confidential sources, they're paying confidential human sources, etc. We're in danger here of writing the exemption out of the statute. Absolutely, Your Honor. Absolutely. I heartily agree. I don't know what more that I can say to convince the court. I don't know what more they should do in this case, but in the future, everything will be picked apart. Everything will be inadequate, and I realize this is not technically an interlocutory appeal, because we have these from final judgments, but it resembles in many instances a discovery matter, and we're going to have, before anything is ever done, we're going to have a series of appeals over essentially discovery matters, which are historically best left to the individual case as it proceeds. And the discovery rules are actually sensitive to the needs of a defendant for notice and the rest, and we are in danger of overriding the very careful balance that Congress has struck, or that the federal courts have struck, in the federal rules of criminal procedure discovery. Again, I wholeheartedly agree with that, Your Honor, and I think that this case strikes the balance that perhaps the Supreme Court envisioned in saying that the categorical approach could be used, and it's certainly consistent with what this court has allowed in the way of Spanos. One other thing that I would just simply point out, Your Honor, is that there is this notion that somehow or another the district court erred because she did not, in the spirit of comedy, cite to or even acknowledge the Middle District of Florida case. But I would just simply point out that the FOIA requests were different there. As Judge Heitens pointed out, this is the cost of litigating all across the country that you're going to get, particularly when your requests are narrow to other categories that were not at issue in this particular case. You're going to get those particular results, and I would also point out that technically, the comedy doctrine simply applies when you have the same parties and the same issues. Thank you, Your Honor. Thank you. I'm going to ask my co-panelists if they have any further questions. Judge Gregory? All right. Thank you, Your Honor. We thank you. You have some rebuttal time, sir. Yes, thank you, Your Honor. I'm going to have to be delicate in following up that 20-minute soliloquy. Why was this case litigated all over the country in little bits and pieces? You know, you go down to Florida, and there's another case here, and there's another case there, and there, and here. It strikes me that this is a multiplicity, a bar to the kind of litigation strategy that you have pursued, and the courts are sensitive to multiplicity because it drains resources to start with, and it sows potential conflicts over what are essentially the same documents and the same requests. Now, there may be some slight variation, but basically, they are the same. And yet, you know, all over the country, we're having a FOIA suit. And it makes me, I mean, how many bites does someone get at the Apple if we say this is just terrific? So what I would say, Your Honor, is, and not to be too crass in handling it, but because Congress in its infinite wisdom chose to allow us to do so, we can. FOIA does not preclude essentially what we typically would think of as forum shopping. Well, Congress does. Congress sets forth causes of action all the time, but those causes of action are still reined in by some notion of preclusion, be it collateral estoppel or race judicata or whatever. But it seems to me what you're asking is for a cause of action that is subject to no preclusion rules and that raises the dangers of multiplicity besides. So, putting aside that the government hasn't necessarily argued that in terms of the idea that we could not separately raise this, I would note that the Middle District of Florida case has three categories or three line items at issue from what was essentially an identical FOIA request that are distinct from the categories or the line items that are at issue in this proceeding. And whereas in this one, most of the line items were taken trying to seek records that were tied to the redacted but unsealed memorandum opinion in the Sanders criminal prosecution, at least two of the line items in Florida were far broader and seeking information concerning the larger operation as opposed to simply what had gone on in the Sanders prosecution. And that's why as far as we're concerned, even to the extent that there is obviously going to be some overlap, and there was, these are two different cases, but they are making almost identical arguments. And one judge in Maryland ruled one way and one judge in Florida ruled another way. And to the extent that we have referenced the Middle District's ruling, it has been for insight into where that judge, relying on similar amounts of information in the Seidel declarations, said even with this detail, your categories, your subcategories are not functional. Even describing to me these 20 different types of records, I still can't trace for these particular subcategories how that links up to the alleged likely interference, particularly when it came to that exchange of information subcategory. And that's the same thing we outlined here before the district court and we've outlined in our papers. And to address one of the documents that were referenced by government counsel, they referenced a document that's listed in a subcategory for administrative instructions and materials. We didn't challenge that subcategory. We said they had sufficiently done their job on that one. That document is not referenced as one of the ones following the scope of the two subcategories we are challenging. It's not referenced in the information and physical documentary category or the exchange of information category. So that was an interesting point, but obviously not relevant to the legal issue before this panel. If there are no other questions, Your Honor, I thank you for today and for the questions and we look forward to your decision. We thank you, Judge Gregory. Do you have any questions of this gentleman? Thank you. Thank you, Your Honors. All right. We appreciate your arguments. Under doctor's orders not to circulate around in midwinter, but I want to say I appreciate your arguments. Nonetheless, here's my handshake from the bench. It's heartfelt. And my two colleagues, if they wish, will come down and say hi to you. Thank you.
judges: J. Harvie Wilkinson III, Roger L. Gregory, Toby J. Heytens